William L. Buus (SBN 180059)
Eric M. Schiffer (SBN 179695)
959 South Coast Drive, Suite 385
Costa Mesa, CA 92626
Telephone:  (949)825-6140
Facsimile:  (949)825-6141
Email:       wbuus@schifferbuus.com
             eschiffer@schifferbuus.com

Attorneys for Defendants/Counterclaimants
DEKALB OB/GYN AFFILIATES L.L.C. and
SHIRLEY RIGAUD-ECHOLS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEKALB OB/GYN AFFILIATES L.L.C., a Georgia limited liability company; SHIRLEY RIGAUD-ECHOLS, and individual, and DOES 1-10, inclusive,<br><br>Defendants.<br><br>DEKALB OB/GYN AFFILIATES L.L.C., a Georgia limited liability company; SHIRLEY RIGAUD-ECHOLS, an individual<br><br>Counterclaimants<br><br>vs.<br><br>BALBOA CAPITAL CORPORATION, a California Corporation; CYNOSURE, INC., a Massachusetts Corporation, and ROES 1-10, inclusive.<br><br>Counterdefendants | Case No.:  8:19-cv-00482-AG-KES<br><br>**ANSWER TO COMPLAINT AND COUNTERCLAIMS BY DEFENDANTS DEKALB OB/GYN AFFILIATES L.L.C. AND SHIRLEY RIGAUD-ECHOLS**<br><br>**DEMAND FOR JURY TRIAL** |

Defendants DEKALB OB/GYN AFFILIATES L.L.C. and SHIRLEY RIGAUD-ECHOLS (hereinafter "DEKALB," "RIGAUD-ECHOLS," or collectively, "Defendants"), responding to the Complaint (hereinafter "Complaint") of Plaintiff BALBOA CAPITAL CORPORATION (hereinafter "BALBOA" or "Plaintiff"), here, state and allege as follows:

1. Answering Paragraph 1 of Plaintiff's Complaint, Defendants, and each of them, are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

2. Answering Paragraph 2 of Plaintiff's Complaint, Defendants, and each of them, admit all of the allegations contained therein.

3. Answering Paragraph 3 of Plaintiff's Complaint, Defendants, and each of them, admit the allegations contained as to Defendant RIGAUD-ECHOLS's residence, but deny that she is a personal guarantor.

4. Answering Paragraph 4 of Plaintiff's Complaint, Defendants, and each of them, admit the allegations contained as to Defendant RIGAUD-ECHOLS's status vis-à-vis DEKALB OB/GYN, but deny that she is a personal guarantor.

5. Answering Paragraph 5 of Plaintiff's Complaint, Defendants, and each of them, are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

6. Answering Paragraph 6 of Plaintiff's Complaint, Defendants, and each of them, are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

7. Answering Paragraph 7 of Plaintiff's Complaint, Defendants, and

each of them, are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

8. Answering Paragraph 8 of Plaintiff's Complaint, Defendants, and each of them, are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

9. Answering Paragraph 9 of Plaintiff's Complaint, Defendants, and each of them, admit that the document referenced speaks for itself.

## ANSWER TO FIRST CAUSE OF ACTION

(Breach of Equipment Financing Agreement Against Defendant DEKALB OB/GYN)

10. Answering Paragraph 10 of Plaintiff's Complaint, Defendants, and each of them, reincorporate their responses to paragraphs 1-9.

11. Answering Paragraph 11 of Plaintiff's Complaint, Defendants, and each of them, admit receipt of a document, the terms of which speaks for itself.

12. Answering Paragraph 12 of Plaintiff's Complaint, Defendants, and each of them, deny that payments continued to be due and owing to the Plaintiff due to, among other things, frustration of purpose and misrepresentations surrounding the collateral referenced, as well as the repossession of the collateral.

13. Answering Paragraph 13 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

14. Answering Paragraph 14 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

15. Answering Paragraph 15 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

16. Answering Paragraph 16 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

17. Answering Paragraph 17 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

18. Answering Paragraph 18 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

19. Answering Paragraph 19 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

## ANSWER TO SECOND CAUSE OF ACTION

(Recovery of Possession of Personal Property Against All Defendants)

20. Answering Paragraph 20 of Plaintiff's Complaint, Defendants, and each of them, reincorporate their responses to paragraphs 1-19.

21. Answering Paragraph 21 of Plaintiff's Complaint, Defendants, and each of them, deny default, and further contend that Defendants sought to return the Collateral almost immediately upon receipt due to, among other things, frustration of purpose and misrepresentation, but that Plaintiff, by and through its agent, Great Lakes Asset Solutions, did not retrieve the unused Collateral until February 26, 2019.

22. Answering Paragraph 22 of Plaintiff's Complaint, Defendants, and each of them, deny default, and further contend that Defendants sought to return the Collateral almost immediately upon receipt due to, among other things, frustration of purpose and misrepresentation, but that Plaintiff, by and through its agent, Great Lakes Asset Solutions, did not retrieve the unused Collateral until February 26, 2019.

23. Answering Paragraph 23 of Plaintiff's Complaint, Defendants, and each of them, deny default, and further contend that Defendants sought to return the Collateral almost immediately upon receipt due to, among other things, frustration of purpose and misrepresentation, but that Plaintiff, by and through its agent, Great Lakes Asset Solutions, did not retrieve the unused Collateral until February 26, 2019.

## ANSWER TO THIRD CAUSE OF ACTION

(Breach of Guaranty Against Defendant GUARANTOR)

24.     Answering Paragraph 24 of Plaintiff's Complaint, Defendants, and each of them, reincorporate their responses to paragraphs 1-23.

25.     Answering Paragraph 25 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

26.     Answering Paragraph 26 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

27.     Answering Paragraph 27 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

28.     Answering Paragraph 28 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

## ANSWER TO FOURTH CAUSE OF ACTION

(Indebtedness Against All Defendants)

29.     Answering Paragraph 29 of Plaintiff's Complaint, Defendants, and each of them, reincorporate their responses to paragraphs 1-28.

30.     Answering Paragraph 30 of Plaintiff's Complaint, Defendants, and each of them, deny each and every allegation contained in that paragraph.

## GENERAL DENIAL

Unless specifically admitted, denied, modified or otherwise controverted herein, Defendants, and each of them, deny each and every allegation of Plaintiff's Complaint, including but not limited to any unnumbered paragraphs and headings.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

///

5

## SECOND AFFIRMATIVE DEFENSE

### (Waiver)

2. Plaintiff's Complaint, and each and every claim alleged therein, is barred by the doctrine of waiver .

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

3. Plaintiffs' Complaint, and each and every claim asserted therein, is barred by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

### (Setoff)

4. Plaintiffs' Complaint, and each and every claim asserted therein, to the extent it claims damages arising from the finance loan of the subject Collateral, is setoff by the repossession of the unused Collateral by and through its agent, Great Lakes Asset Solutions, on February 26, 2019.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

5. Although Defendants deny they are liable to Plaintiff for any reason and deny that Plaintiff suffered any damages whatsoever, they allege, alternatively, that if Plaintiff suffered any damages as a result of any act and/or omission of Defendants, such damages could and should have been mitigated by reasonable efforts on the part of Plaintiff. Due to Plaintiff's failure to take reasonable steps to prosecute and/or defend its interests, including immediately collecting and liquidating the subject collateral in order to eliminate or reduce any alleged indebtedness, its damages have been exacerbated wholly due to its own fault and that of its agents, employees and attorneys, and therefore it is barred from obtaining recovery from Defendants for any such damages.

///

///

## SIXTH AFFIRMATIVE DEFENSE

### (Misrepresentations)

6.  Plaintiff's alleged damages arise from a relationship formed by a party; to wit, CYNOSURE, INC., who made misrepresentations or material omissions to Defendants to induce them into purchasing the subject collateral and referred them to Plaintiff to finance the transaction.

## SEVENTH AFFIRMATIVE DEFENSE

### (Excuse from Performance/Frustration of Purpose)

7.  Plaintiff's alleged damages arise from a relationship formed by a party; to wit, CYNOSURE, INC., an agent for Plaintiff, who told Defendants that the procedures to be performed by using the subject collateral (i.e. elective vaginal rejuvenation) would be approved by the FDA. The FDA, however, specifically did not approve the use of the subject collateral in the manner for which it was intended when purchased, and thereafter specifically named CYNOSURE's product (the subject collateral) in its statement warning against use of the subject collateral for those purposes, thereby frustrating the very purpose of the financing agreement since the subject collateral was unsafe for use.

## PRAYER FOR RELIEF

WHEREFORE, Defendants DEKALB OB/GYN AFFILIATES L.L.C. and SHIRLEY RIGAUD-ECHOLS request the following:

1.  That Plaintiff BALBOA CAPITAL CORPORATION take nothing by reason of its Complaint and that judgment be rendered in Defendants' favor;

2.  That Defendants DEKALB and RIGAUD-ECHOLS be awarded their attorneys' fees and costs to the extent permitted by contract;

3.  That Defendants be awarded such other and further relief as it may deem just and appropriate.

///

///

## COUNTERCLAIMS

For their Counterclaims against Counterdefendants BALBOA CAPITAL CORPORATION ("BALBOA") and CYNOSURE, INC. ("CYNOSURE"), Counterclaimants DEKALB OB/GYN AFFILLIATES L.L.C. ("DEKALB") and SHIRLEY RIGAUD-ECHOLS ("RIGAUD-ECHOLS") state and allege the following:

## THE PARTIES

1. DEKALB OB/GYN AFFILLIATES L.L.C. is a Georgia limited liability company. Its sole member is SHIRLEY RIGAUD-ECHOLS, a Georgia citizen doing business in DeKalb County, Georgia.

2. On information and belief, BALBOA is a California Corporation with its principal place of business in Orange County, California.

3. On information and belief, CYNOSURE is a Massachusetts Corporation with its principal place of business in Middlesex County, Massachusetts.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of the Counterdefendants named herein as ROES 1-10, inclusive, are unknown to DEKALB and RIGAUD-ECHOLS, who therefore sue said Counterdefendants by such fictitious names. DEKALB and RIGAUD-ECHOLS will amend this Counterclaim to show their true names and capacities when same have been ascertained.

5. DEKALB and RIGAUD-ECHOLS are informed and believe, and thereon allege that each of the fictitiously named Counterdefendants are liable to DEKALB and RIGAULD-ECHOLS as herein alleged, and that DEKALB and RIGAUD-ECHOLS's rights against such fictitiously named Counterdefendants arise from such liability.

6. At all times herein, Counterdefendants were the agents, servants, and employees of their Co-Counterdefendants and, in doing the things hereinafter

mentioned, were acting within the scope of their authority as such agents, servants, and employees, with the permission and consent of their Co-Counterdefendants.

## JURISDICTION AND VENUE

7. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332 because it is between citizens of different states and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Complete diversity of citizenship exists.

8. This Court has personal jurisdiction over BALBOA as BALBOA initiated litigation in this district against DEKALB and RIGAUD-ECHOLS concerning the financing of the subject collateral, the purchase and value of which are the subject of this counterclaim. The Court has personal jurisdiction over CYNOSURE as, on information and belief, it does business extensively with BALBOA in this district to secure financing for its customers in order to facilitate the purchase of its medical equipment across the country, such as the subject collateral in this case. Accordingly, CYNOSURE purposefully availed itself of the jurisdiction of this court.

9. Venue is proper in this judicial district because, upon information and belief, BALBOA and CYNOSURE conduct substantial business directly and/or through third parties or agents in this judicial district.

## GENERAL ALLEGATIONS

10. DEKALB is a full service medical practice offering services including, but not limited to, general obstetrics, general gynecology, treatment for infertility, preventative health and well woman care. RIGAUD-ECHOLS is a medical doctor and sole member of DEKALB.

11. On or about May 31, 2018, CYNOSURE representatives visited DEKALB and made a presentation about the Mona Lisa Touch Laser System ("Mona Lisa"), which its representatives (including Chris Cononi) touted as a

medical device that could safely perform vaginal rejuvenation elective procedures for patients. CYNOSURE, by and through its representatives, including Cononi, further represented that the Mona Lisa Touch Laser System was safe for use in that capacity, and that FDA approval for such usage was pending.

12. Based upon those representations, DEKALB agreed to purchase a Mona Lisa unit, and over the next couple of weeks, did so. To facilitate the purchase, CYNOSURE directed DEKALB to BALBOA to arrange for financing. It was apparent to DEKALB that CYNOSURE and BALBOA had a long standing relationship on arranging for financing for the purchase of CYNOSURE's medical equipment, including the Mona Lisa. CYNOSURE knew that BALBOA was a California-based lender and purposely availed itself of California in order to arrange for DEKALB's financing of the Mona Lisa. DEKALB is informed and believes and thereon alleges that CYNOSURE was paid in full by BALBOA for the purchase of the Mona Lisa in the amount of $157,140.00. A true and correct copy of the invoice from CYNOSURE to DEKALB for this transaction is attached hereto as Exhibit A.

13. Following payment to CYNOSURE from BALBOA, and delivery to DEKALB of the Mona Lisa, CYNOSURE sent a technician to open the box. No training, however, was ever scheduled between CYNOSURE and DEKALB. In fact, DEKALB never used the Mona Lisa that was delivered to the office.

14. On July 30, 2018, the FDA issued a statement warning about risks related to devices for use in medical procedures for vaginal rejuvenation. A true and correct copy of the statement is attached as Exhibit B. The statement specifically called out CYNOSURE as one of the device manufacturers for which they had "concerns about inappropriate marketing of their devices for 'vaginal rejuvenation' procedures."

15. Upon seeing this statement, DEKALB and RIGAUD-ECHOLS were understandably concerned about the viability of using the Mona Lisa since the very

purpose for which the Mona Lisa had been purchased in the first instance had been frustrated. Moreover, the representation by CYNOSURE (by and through its agents) of pending FDA approval was false. DEKALB, by and through RIGAUD-ECHOLS, therefore immediately contacted CYNOSURE, on or about July 31, 2018, about returning the equipment and cancelling the transaction in light of this information and the frustration of purpose of the transaction. RIGAUD-ECHOLS was told that Chris Cononi was no longer working for CYNOSURE, and further that both CYNOSURE and BALBOA refused to cancel the transaction.

16.   The Mona Lisa remained unused, with all of its component parts wrapped in plastic and in the box in which it came. Finally, after requesting since July 31, 2018 that CYNOSURE and/or BALBOA take back the equipment, on February 26, 2019, an individual representing himself as being with Great Lakes Asset Solutions came unannounced to the DEKALB office to repossess the Mona Lisa. At the time of the repossession, the Mona Lisa remained unused.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**(Setoff as Against BALBOA)**

17.   DEKALB and RIGAUD-ECHOLS incorporate and reallege by reference each and every paragraph herein as if set forth in full in this count.

18.   DEKALB and RIGAUD-ECHOLS deny that they owe any indebtedness to BALBOA based upon the frustration of purpose of the underlying transaction in light of the usability and safety issues that arising concerning the Mona Lisa device, as well as the misrepresentations set forth more fully above.

19.   In the alternative, however, if an indebtedness is found to be due and owing from DEKALB and/or RIGAUD-ECHOLS to BALBOA, then that indebtedness should be eliminated or substantially reduced based upon the repossession of the Mona Lisa device on February 26, 2019 by Great Lakes Asset Solutions, BALBOA and/or CYNOSURE's agent.

11

ANSWER AND COUNTERCLAIMS BY DEFENDANTS DEKALB OB/GYN
AFFILIATES L.L.C. AND SHIRLEY RIGAUD-ECHOLS

# COUNT II

**(Intentional Misrepresentation/Concealment as Against CYNOSURE)**

20. DEKALB and RIGAUD-ECHOLS incorporate and reallege by reference each and every paragraph herein as if set forth in full in this count.

21. On or about May 31, 2018, CYNOSURE, by and through its agents, employees, and representatives, including, but not limited to, Chris Cononi, represented to DEKALB and RIGUAD-ECHOLS that the Mona Lisa device was appropriate and safe for elective vaginal rejuvenation procedures, and that approval of the device was pending with the FDA.

22. Those representations were, however, false.  The actual facts were that the Mona Lisa was not safe for the intended elective procedures, and that FDA approval was not pending.  Rather, on July 30, 2018, the FDA issued a statement warning about risks related to devices for use in medical procedures for vaginal rejuvenation and specifically called out CYNOSURE as one of the device manufacturers for which they had "concerns about inappropriate marketing of their devices for 'vaginal rejuvenation' procedures."

23. CYNOSURE knew that the representations were either false or made recklessly and without regard for their truth that FDA approval was not pending and that the device was not safe for the anticipated usage by DEKALB.

24. CYNOSURE, by and through its representative, intended that DEKALB and RIGAUD-ECHOLS rely upon those representations so that CYNOSURE could make a sale of the Mona Lisa device to DEKALB.

25. DEKALB and RIGAUD-ECHOLS reasonably relied upon CYNOSURE's representations and proceeded to purchase a Mona Lisa device for $157,140.00, financing for which CYNOSURE arranged through BALBOA.

26. DEKALB and RIGAUD-ECHOLS have returned the Mona Lisa device to CYNOSURE and/or BALBOA, by and though its agent, Great Lake Asset Solutions, on February 26, 2019.  Yet BALBOA continues to seek the

entirety of the cost of the device, plus interest and fees from DEKALB and RIGAUD-ECHOLS. This was notwithstanding that DEKALB and RIGAUD-ECHOLS demanded, beginning on July 31, 2018, that BALBOA and/or CYNOSURE accept the return of the Mona Lisa device. For unexplained reasons, they did not finally take back the Mona Lisa device for an additional six months. As such, DEKALB and RIGAUD-ECHOLS have been damaged in an amount to be determined at trial, but not less than the amount currently sought from BALBOA ($193,685.99).

27. The conduct by CYNOSURE was fraudulent, and done with the intent to deceive DEKALB and RIGAUD-ECHOLS into purchasing a Mona Lisa device, which subjects CYNOSURE to punitive and exemplary damages.

## COUNT III

### (Negligent Misrepresentation as Against CYNOSURE)

28. DEKALB and RIGAUD-ECHOLS incorporate and reallege by reference each and every paragraph herein as if set forth in full in this count.

29. On or about May 31, 2018, CYNOSURE, by and through its agents, employees, and representatives, including, but not limited to, Chris Cononi, represented to DEKALB and RIGUAD-ECHOLS that the Mona Lisa device was appropriate and safe for elective vaginal rejuvenation procedures and that approval of the device was pending with the FDA.

30. Those representations were, however, false. The actual facts were that the Mona Lisa was not safe for the intended elective procedures, and that FDA approval was not pending. Rather, on July 30, 2018, the FDA issued a statement warning about risks related to devices for use in medical procedures for vaginal rejuvenation and specifically called out CYNOSURE as one of the device manufacturers for which they had "concerns about inappropriate marketing of their devices for 'vaginal rejuvenation' procedures."

31. At the time CYNOSURE, by and through its representatives including

Chris Cononi made those representations, it had no reasonable grounds for believing the representation was true.

32. CYNOSURE intended that DEKALB and RIGAUD-ECHOLS rely upon these representations in order to consummate a sale of the Mona Lisa device.

33. DEKALB and RIGAUD-ECHOLS reasonably relied upon CYNOSURE's representations and proceeded to purchase a Mona Lisa device for $157,140.00, financing for which CYNOSURE arranged through BALBOA.

34. DEKALB and RIGAUD-ECHOLS have returned the Mona Lisa device to CYNOSURE and/or BALBOA, by and though its agent, Great Lake Asset Solutions, on February 26, 2019.  Yet BALBOA continues to seek the entirety of the cost of the device, plus interest and fees from DEKALB and RIGAUD-ECHOLS.  This was notwithstanding that DEKALB and RIGAUD-ECHOLS demanded, beginning on July 31, 2018, that BALBOA and/or CYNOSURE accept the return of the Mona Lisa device.  For unexplained reasons, they did not finally take back the Mona Lisa device for an additional six months.  As such, DEKALB and RIGAUD-ECHOLS have been damaged in an amount to be determined at trial, but not less than the amount currently sought from BALBOA ($193,685.99).

## **PRAYER FOR RELIEF**

Wherefore, DEKALB and RIGAUD-ECHOLS pray that this Court enter judgment in their favor on the claims for relief set forth above including, but not limited to, the following:

1. Declaration of setoff such that nothing remains due and owing from DEKALB and/or RIGAUD-ECHOLS to BALBOA, or alternatively, that the amount of indebtedness, if any, be substantially reduced in light of the return of the unused Mona Lisa device;

2. Damages against CYNOSURE in amount to be determined, but at least $193,685.99 (the amount currently sought against them by BALBOA);

      3.      Punitive damages against CYNOSURE;

      4.      Costs, expenses, pre-judgment and post-judgment interest, as appropriate against CYNOSURE; and

      5.      Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

In accordance with Federal Rules of Civil Procedure 38 and 39, Defendants DEKALB OB/GYN AFFILIATES L.L.C. and SHIRLEY RIGAUD-ECHOLS hereby demand a trial by jury on all issues embodied in Plaintiff's complaint, as well as their answer and counterclaims.

Respectfully submitted,

Dated: March 18, 2019      SCHIFFER & BUUS, APC

      */s/ Eric M. Schiffer* .
By: Eric M. Schiffer
     William L. Buus
Attorneys for Defendants/Counterclaimants
DEKALB OB/GYN AFFILIATES L.L.C.
and SHIRLEY RIGAUD-ECHOLS

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |

2  I am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and am not a party to the within action. My business address is that of 959 South Coast Drive, Suite 385 Costa Mesa, California 92626.

I hereby certify that on March 18, 2019, I electronically filed the foregoing **ANSWER AND COUNTERCLAIMS BY DEKALB OB/GYN AFFILIATES L.L.C. and SHIRLEY RIGAUD-ECHOLS** with the Clerk of the Court using ECF which will send notification and a copy of such filing to the following persons:

See Attached Service List

Executed on March 18, 2019, at Costa Mesa, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

　　　　　　　　　　　　　　　　 */s/ Eric M. Schiffer*

<u>SERVICE LIST</u>

Michelle A. Chiongson
Marisa D. Poulos
BALBOA CAPITAL CORPORATION
575 Anton Blvd., 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

michelleac@balboacapital.com
marisa.poulos@balboacapital.com